## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO
## (EASTERN DIVISION)

| | |
|---|---|
| **PIERRE ROMEL HOWARD**<br>**168 Glenholme Avenue**<br>**Toronto, Ontario M6E 3C4**<br>**Canada**<br><br>     **Petitioner,**<br><br>**v.**<br><br>**DANIELLE ALEXANDRIA DAVIS HOWARD**<br>**3653 Fenley Road**<br>**Cleveland Heights, Ohio 44121-1368**<br><br>     **Respondent** | *<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>* |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### VERIFIED PETITION FOR RETURN OF CHILD TO CANADA
### & FOR EXPEDITED RELIEF

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq*.**

Petitioner, Pierre Romel Howard ("Father"), by and through his undersigned attorneys, files his Verified Petition for Return of Child to Canada & for Expedited Relief ("Petition"), against the Respondent, Danielle Alexandria Davis Howard ("Mother"), and states as follows.

### I.  HAGUE CONVENTION

1.     The Petition is filed pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1]  (the "Hague Convention" or "Convention"), and the International Child Abduction Remedies Act ("ICARA").[2]

---

[1]T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).
[2]22 U.S.C.A. § 9001 *et seq*.

1

2.      The Convention came into effect in the United States of America on July 1, 1988, and was ratified between the United States of America and Canada on July 1, 1988.[3]

3.      The Hague Convention was adopted to address and discourage the problem of international unilateral action by one parent. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014).

4.      Through the adoption of the Hague Convention, the States Parties, including the United States of America and Canada, have sought "to protect children internationally from the harmful effects of their wrongful removal or retention . . ." Hague Convention, preamble; *see also* Hague Convention, art. 1; International Child Abduction Remedies Act ("ICARA") 22 U.S.C.A. § 9001 *et seq.*; *Abbott v. Abbott*, 560 U.S. 1, 8 (2010).

5.      The objects of the Convention are: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.

6.      As the Court has explained, the purpose of the Hague Convention is to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence; and to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court. *See, e.g., Panteleris v. Panteleris*, 30 F. Supp. 3d 674, 680 (N.D. Ohio 2014) (internal citations omitted).

---

[3] *See* Hague Abduction Convention Country List, text available at:https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last accessed June 2, 2026).

7. Father seeks the prompt return of his son RPH, who is three years old ("RPH" or "child"), to his habitual residence of the Province of Ontario, Canada.

8. Upon information and belief, Mother removed the child from Canada on or about October 24, 2025, as explained *infra*.

## II. FEDERAL JURISDICTION

9. The Court has jurisdiction under ICARA § 9003 because this case involves a federal question regarding the removal of RPH, who is under the age of 16, to the United States of America, from his habitual residence of the Province of Ontario, Canada.

10. Upon information and belief, the child is currently located within the jurisdiction of the Court in the Northern District of Ohio, Eastern Division, in Cuyahoga County, at 3653 Fenley Road, Cleveland Heights, Ohio 44121-136827.[4]

11. Congress has specifically granted concurrent original jurisdiction to the federal courts for actions arising under the Hague Convention. ICARA § 9003. State court custody actions may not trump clearly granted federal court jurisdiction to decide actions arising under the Hague Convention.

12. The Petition is filed because of Mother's wrongful removal of the parties' child to the United States of America from the child's habitual residence of the Province of Ontario, Canada.

## III. FACTS

13. The parties were married on June 1, 2020 in Santa Ana, California.

14. The parties relocated together to Toronto, Province of Ontario, Canada on July 7, 2021.

---

[4] The U.S. Department of State has identified this address for the Mother and child to undersigned counsel in accordance with its obligations under article 7 of the Hague Convention.

15.     Father is a United States citizen.

16.     Mother is a United States citizen.

17.     Upon relocation and arrival in Canada, Mother and Father applied for work visas in Canada. Mother received her work permit through her employment at York University in Toronto, and Father received an open work permit as her spouse.

18.     Father applied for permanent residence in Canada as a dependent on Mother's permanent residence application.

19.     Father's initial spousal work permit expired in June 2024. Father therefore applied for a new work permit, which was approved on January 7, 2025.

20.     Father's initial permanent residence application, following the parties' separation and as explained infra, was temporarily suspended in October 2023.

21.     Father is employed by a non-profit community youth, sports, and learning organization, which is a registered charity in Toronto.

22.     The parties are the parents of RPH, born in 2023 in the parties' home in Toronto, Province of Ontario, Canada.

23.     Upon the birth of RPH, the parties share decision-making responsibility (custody) for the child by operation of Province of Ontario law.

24.     RPH is a dual citizen of Canada and the United States of America.

25.     The parties separated on August 25, 2023.

26.     On September 6, 2023, Mother filed a family law Application in the Ontario Court of Justice in Toronto, Province of Ontario, Canada, in Court File Number FO-23-44318-000 ("Canadian Family Court").

4

27. Father and Mother have had no contact with each other since separation, except at exchanges of the child in Canada, in court in Canada, and via text and a parenting communication application recommended by the Canadian Family Court.

28. She alleged that Father engaged in aggressive and confrontational outbursts, criticized Mother, and disregarded her and the child's wellbeing when the family were living together.

29. Father denies the allegations Mother has made in the Canadian Family Court.

30. The Canadian Family Court progressed over the next two years and tried to ensure that Father had ongoing parenting time with the child.

31. But over those next two years, Mother repeatedly interfered with Father's court-ordered parenting time with the child in Toronto, Province of Ontario, Canada.

32. On July 19, 2025, Toronto Police contacted Father in response to Mother making a police report earlier the same month that Father had sexually assaulted Mother.

33. Mother did not make any such sexual assault claim in any pleading, paper or affidavit she has filed in the Canadian Family Court.

34. Father denies that he ever sexually assaulted Mother.

35. As a result of the police investigation in Canada, Father was required to sign an *Undertaking/Promesse* on July 20, 2025, and to deposit his United States Passport with the Toronto Police.

36. In light of Mother's repeated interference in Father's parenting time with the child between August 2023 and August 2025, the Canadian Family Court held a contempt hearing on August 26, 2025.

37. Both parties and their counsel attended the August 26, 2025 contempt hearing.

38.     The Canadian Family Court ruled at the August 26, 2025 contempt hearing:

i.    Mother had breached the prior Canadian Family Court orders;

ii.   Ordered that Father was to have make-up time with the child;

iii.  Ordered that Mother was to pay for a parenting exchange service for exchanges of the child;

iv.   Ordered that Father had sole authority to make medical decisions for the child;

v.    Ordered that Father had sole authority to hold the Canadian Health Card for the child;

vi.   Ordered that Father had sole authority to take the child to the child's medical appointments; and

vii.  Ordered that RPH was not to be removed from the Province of Ontario, Canada.

39.     Over the next two months, the exchanges of the child continued in Toronto, Province of Ontario, Canada.

40.     On October 27, 2025 Father's counsel was notified in correspondence sent by Mother, via the United States Postal Service, that Mother was attempting to withdraw her application in the Canadian Family Court, and had filed a request to withdraw her permanent residence application.

41.     Upon information and belief, Mother mailed the renunciation correspondence on October 25, 2025 from a company called Postal Annex, which is located in Richmond Heights, Ohio.

42. Upon information and belief, Mother removed the child from Canada in violation of the Canadian Family Court ne exeat order, on or about October 24, 2025.

43. On October 27, 2025, Father's counsel therefore appeared on an urgent basis in the Canadian Family Court.

44. Mother was served with notice of the urgent hearing in accordance with the laws of the Province of Ontario, and she was provided a Zoom link to join the Canadian Family Court for the same-day urgent hearing. She failed to appear.

45. The Canadian Family Court ruled at the October 27, 2025 urgent hearing:

 i. Mother is to return the child immediately to the City of Toronto, Province of Ontario, Canada, and to the care of Father;

 ii. RPH's habitual residence is the Province of Ontario, Canada;

 iii. The Canadian Family Court continues to have jurisdiction over the child; and

 iv. Father shall have sole decision-making responsibility for the child pending further order of the Canadian Family Court.

46. Since October 27, 2026, Mother has not responded in any way to Father, the Canadian Family Court, or to the Toronto Police.

47. Father has had no contact with RPH since October 19, 2025.

48. Father has never consented or acquiesced to the child's removal from Canada, nor the retention of RPH in the United States of America.

49. On October 30, 2025, Father promptly filed his Hague Convention Application with the Province of Ontario Delegated Central Authority ("PODCA")

50. PODCA promptly forwarded Father's Hague Convention Application to the U.S. Department of State, which serves as the United States Central Authority under the Hague Convention.

51. The United States of America does not provide legal aid to left behind parents who submit Hague Convention applications, under an exception to its ratification of the Hague Convention.

52. Father cannot afford to pay for counsel in the United States of America. He therefore asked the U.S. State Department to try to help him locate an Ohio attorney through the U.S. State Department volunteer attorney network, the Hague Convention Attorney Network.[5]

53. Over the next six months, the U.S. State Department was unable to connect Father with any Ohio attorney who was willing to represent Father pro bono in the Northern District of Ohio.

54. Undersigned counsel therefore agreed to represent Father pro bono.

55. The Province of Ontario, Canada, is the child's ordinary home and holds a degree of settled purpose from the child's perspective.

56. The child is fully involved and integrated in all aspects of daily and cultural life in the Province of Ontario, Canada.

57. The child receives routine health care in the Province of Ontario, Canada.

58. The child participates in playdates and cultural activities in the Province of Ontario, Canada.

---

[5]https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/for-providers/attorneys/join-the-attorney-network.html (last accessed June 2, 2026).

59.     The child has lived continuously, without interruption in the Province of Ontario, Canada, since his birth until the Mother removed him from Canada in violation of the Canadian Family Court ne exeat order.

60.     On the date of the child's removal from Canada, on or about October 24, 2025, the Province of Ontario, Canada was and is the child's home and habitual residence.

## IV.  WRONGFUL REMOVAL CLAIM

61.     The Hague Convention applies to cases in which a child under the age of 16 years has been removed or retained from his or her habitual residence in breach of rights of custody under the law of the child's habitual residence, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

62.     The child is under the age of 16.

63.     From the totality of the circumstances, on the date Mother removed the child to the United States of America from Canada, the Province of Ontario, Canada was and is the child's habitual residence.

64.     At the time Mother removed the child to the United States from Canada, Father had (and continues to have) rights of custody to the child under Canadian law, by operation of law under the Province of Ontario's Children's Law Reform Act (the "Act").

65.     Pursuant to Section 7(2)(1) of the Act, there is a presumption of parentage when a father is "the birth parent's spouse at the time of the child's birth." Act, § 7(2)(1). The parties are married and were married at the time of the child's birth. Both parties' parentage is therefore established by operation of law under Province of Ontario law.

66.     Section 20(1) of the Act provides that ". . . the child's parents are equally entitled to decision-making responsibility with respect to the child." *Id*. at § 20(1).

9

67. Section 20(2) further provides that "[a] person entitled to decision-making responsibility with respect to a child has the rights and responsibilities of a parent in respect of the child and must exercise those rights and responsibilities in the best interests of the child." *Id*. at § 20(2).

68. Father therefore has always had decision-making responsibility for the child as defined by the Act, even prior to the Canadian Family Court emergency orders, because Father is a parent to RPH under the Act, and therefore a holder of decision-making responsibility for the child under Province of Ontario law.

69. Father holds these rights by operation of law even though the Canadian Court has not yet entered final decision-making responsibility orders related to the child; and Father had this right at the time Mother removed the child from the Province of Ontario, Canada on or about October 24, 2025.

70. Decision-making responsibility is defined under Section 18(1) of the Act as "responsibility for making significant decisions about a child's well-being, including with respect to (a) health; (b) education; (c) culture, language, religion and spirituality, and (d) significant extra-curricular activities." *Id*. at § 18(1).

71. Decision-making responsibility under Province of Ontario law therefore necessarily involves the "care of the child" and is therefore a right of custody under Article 5*a* of the Hague Convention.

72. Joint decision-making responsibilities are rights of custody under Article 5*a* of the Hague Convention, and Father holds these rights.

10

73. In addition, Father holds a statutory ne exeat right over the child (in addition to the Canadian Family Court August 26, 2025 ne exeat order) under Province of Ontario law, which is a right of custody under Article 5a of the Hague Convention.

74. In accordance with Sections 39.3(1)-(6) and 39.4(2) of the Act, a parent with joint decision-making responsibility may not relocate a child without first providing 60 days' notice to any other holder of joint decision-making responsibility of the intended relocation. Act, §§ 39.3(1)-(6), 39.4(2). The relocating parent, after providing the required statutory notice, may only relocate the child if "(a) the relocation is authorized by a court; or (b) no objection to the relocation is made in accordance with [the Act] and there is no order prohibiting the relocation." *Id*. at § 39.4(2).

75. "Relocation" is defined in Section 18(1) of the Act as "a change in residence of a child, or of a person who has decision-making responsibility . . . that is likely to have a significant impact on the child's relationship with (a) another person who has decision-making responsibility . . . with respect to the child . . ." *Id*. at § 18(1).

76. Section 28(1)(b) provides that the Court "may by order determine any aspect of the incidents of the right to decision-making responsibility, parenting time or contact, as the case may be, with respect to a child."

77. Section 28(1)(c) further provides that the Court "may make any additional order the court considers necessary and proper in the circumstances, including an order,

> (i) limiting the duration, frequency, manner or location of contact or communication between any of the parties, or between a party and the child,

Docusign Envelope ID: B0C111D1-685D-81B6-828E-47B47CB03CF3

(ii) prohibiting a party or other person from engaging in specified conduct in the presence of the child or at any time when the person is responsible for the care of the child,

(iii) prohibiting a party from changing the child's residence, school or day care facility without the consent of another party or an order of the court,

(iv) prohibiting a party from removing the child from Ontario without the consent of another party or an order of the court,

(v) requiring the delivery, to the court or to a person or body specified by the court, of the child's passport, the child's health card within the meaning of the Health Insurance Act or any other document relating to the child that the court may specify,

(vi) requiring a party to give information or to consent to the release of information respecting the child's well-being, including in relation to the child's health and education, to another party or other person specified by the court, or

(vii) requiring a party to facilitate communication by the child with another party or other person specified by the court in a manner that is appropriate for the child. 2020, c. 25, Sched. 1, s. 6.

78. All of the above order options are available upon the return of the child to Canada.

79. At the time of Mother's removal of the child on or about October 24, 2025, Father was actually exercising his rights of custody within the meaning of Articles 3 and $5a$ of the Convention by caring for the child, fully participating in the child's life, and undertaking all

12

parenting responsibilities since the child's birth, and/or would have been so exercising his rights of custody but for the removal of the child from Canada.

80. Mother did not provide the Act's required statutory notice to Father of her proposed relocation. Father, as a joint holder of decision-making responsibility, was therefore not provided the required opportunity to object to the proposed relocation of the child. Father would have objected if he had been provided the statutory notice.

81. Mother's removal of the child to the United States of America from Canada is therefore wrongful under the Hague Convention because Mother has removed the child from his habitual residence of Canada, in breach of Father's rights of custody to the child under Province of Ontario law, and the Canadian Family Court's August 26, 2025 orders, July 29, 2025 Orders, and April 23, 2025 Orders, which the Father was exercising at the time of the removal, and/or would have been so exercising his rights of custody but for the removal.

82. Notice is given in this pleading that Father is relying upon foreign law. Fed. R. Civ. P. 44.1.

83. Father has never consented to the removal of the child from Canada or acquiesced thereafter to the child remaining in the United States of America.

84. Father has promptly taken all legal steps available to him to seek the return of the child to Canada in accordance with the Hague Convention.

85. The child is currently physically located within the Northern District of Ohio, with Mother, in Cuyahoga County, at 3653 Fenley Road, Cleveland Heights, Ohio 44121-136827.

## V. ARTICLE 18 CLAIM

86.     Father makes a claim under Article 18 of the Convention, which grants the Court plenary power to order the child's return at any time.

87.     The return of the child furthers the aims of the Convention.

88.     The Canadian Family Court is fully seised with jurisdiction over the child at the express request of Mother.

89.     In the event that Mother asserts one or more of the narrow discretionary exceptions to return, and in the event that such a discretionary exception were to be proved, Article 18 confers the Court with discretion to return the child regardless, and the Court should exercise such discretion because:

    i.   Mother has taken steps to sever the child's relationship with Father;

    ii.   Mother has failed to disclose the child's location to Father;

    iii.   There are ongoing legal proceedings in the Canadian Family Court;

    iv.   The child has strong ties since birth to Canada;

    v.   Mother's conduct in reprehensible;

    vi.   The child needs contact with Father;

    vii.   Father has decision-making responsibility for the child;

    viii.   Father has court-ordered parenting time with the child in Canada;

    ix.   There is a need to discourage inequitable conduct; and

    x.   There is a need to deter international abductions.

## VI. EXPEDITED RELIEF REQUESTED

90.     The Hague Convention sets forth the need for expedited action and contemplates a six-week aspirational goal for final determination of this case. Convention, art. 11.

14

91. Father requests that the United States Marshal Service be directed to serve Mother promptly with all process; and that upon service the Court schedule an expedited telephonic or Zoom scheduling conference.

92. The Convention provides that Hague Convention cases should not follow the standard civil action schedule. Contracting States shall use the most expeditious procedures available:

> Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.
>
> *     *     *
>
> The judicial or administrative authorities of the Contracting States **shall act expeditiously** in proceedings for the return of the children.
>
> If the judicial or administrative authority has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay . . .

*See* Convention, arts. 2, 11.

93. The Supreme Court holds that Contracting States to the Convention must "use the most expeditious procedures available to return the child to her habitual residence." *Monasky v. Taglieri*, 140 S. Ct. 719, 724 (2020) (quotations and citations omitted). The Supreme Court has emphasized "the need for both speed and certainty in Convention decision-making." *Chafin v. Chafin*, 568 U.S. 165, 182 (2013) (Ginsburg, J. concurring).

94. 28 U.S.C. § 1657 states, in pertinent part, as follows:

> [T]he court shall expedite the consideration of any action . . . if good cause therefore is shown. For purposes of this subsection,

15

"good cause" is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit.

95. Applying Section 1657, the Hague Convention is a treaty under Article VI of the United States Constitution, and such cases are governed by statute, namely 22 U.S.C. § 9001 *et seq*.

96. Hague Convention cases present a factual context in which requests for expedited consideration have good merit. Good and meritorious cause therefore exists for the Court to expedite consideration of this action.

97. In *Zajaczkowski v. Zajaczkowska*, 932 F. Supp. 128 (D. Md. 1996), the District Court of Maryland explained that "unquestionably at the heart of the Convention is prompt action by courts." *Id.* at 130. The court explained that "the rules of procedure applicable to ordinary civil cases would seem to be at odds with the Convention and ICARA's premium on expedited decision-making. Twenty days to answer a petition, utilization of various discovery devices, and extended trial time work at cross-purposes to the objective of prompt disposition." *Id.* (internal citations omitted).

98. Father therefore requests that the Court enter an initial order setting this matter for an expedited telephonic or Zoom scheduling conference following service of process and thereafter enter an expedited scheduling order to include an expedited evidentiary hearing date.

## VII. PROVISIONAL REMEDIES

99. ICARA provides that the Court may take any provisional remedies necessary to ensure that the child is not removed from its jurisdiction during the pendency of this case. ICARA § 9004.

16

100.    Father therefore requests that the Court's initial order contain a provision (A) prohibiting the removal of the child from the Court's jurisdiction during the pendency of the proceedings in the Court; and (B) requiring Mother to surrender any and all passports, identity cards, visas, birth certificates, and other travel documents for the child to the Court to be held by the Clerk of the Court for safe-keeping during the pendency of these proceedings.

## VIII.  UCCJEA DECLARATION

101.    In the State of Ohio, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified at Ohio Rev. Code. § 3127.01 *et seq*.

102.    Ohio law addresses the appearance of the parties and the child in such cases in § 3127.24.  The section authorizes the Court to order the appearance of the child and custodian or custodians. *Id*.

103.    The Court therefore has the authority to issue any and all orders requiring the appearance of Mother in that the provisions of 22 U.S.C. § 9004 are met.

104.    The details regarding the child that are required to be provided under the UCCJEA are as follows:

    i. The child is currently located within the jurisdiction of the Court at 3653 Fenley Road, Cleveland Heights, Ohio 44121-136827

    ii. Since birth, and preceding the removal of the child from Canada, and then filing of this action, RPH has lived at the following addresses:

        a. 1240 Lansdowne Avenue, Toronto, ON M6H 3Z8;

        b. 706-310 Tweedsmuir Avenue, Toronto, ON M5P 2Y2;

17

        c.   168 Glenholme Avenue, Toronto, ON M6E 3C4; and

        d.   609 - 400 Walmer Road, Toronto, ON M5P 2X7.

    iii.   Father does not have information of any custody proceeding concerning the child pending in any other court of this or any other State, except as set forth in this Petition.

    iv.   Father does not know of any person or institution not a party to the proceedings that has physical custody of the child or claims to have guardianship and parental responsibility, or legal custody or physical custody of, or visitation or parenting time with the child.

## IX. NOTICE OF HEARING

105. Pursuant to 22 U.S.C. 9003(c), the parties will be given notice of any hearing in accordance with the Ohio UCCJEA and all applicable Federal Rules.

## X. NECESSARY OUT-OF-POCKET EXPENSES

106. Father has incurred, and will continue to incur, necessary out-of-pocket expenses because of Mother's removal of the child.

107. Father respectfully requests that following the entry of a return order under article 12 of the Convention, the Court award Father his reasonable and necessary out-of-pocket expenses and costs incurred in accordance with ICARA § 9007.

**WHEREFORE**, Petitioner, Pierre Romel Howard, respectfully requests the following relief:

A. That the Court expedite and grant the Petition;

B. That the Court enter provisional remedies to ensure the child remains within the jurisdiction of the Court;

18

C.      That upon service of the Petition, the Court schedule an expedited telephonic or Zoom scheduling conference; and

D.      That the Court schedule an expedited evidentiary hearing and permit the Petitioner to participate in all proceedings by Zoom from Canada.

## VERIFICATION

PURSUANT TO 28 U.S.C.A. §1746, I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON _____6/2/2026_____.

Signed by:

*Pierre R. Howard*

3107F912E985476...

Pierre Romel Howard
*Petitioner*

Respectfully submitted,

/s/ Stephen J. Cullen
Stephen J. Cullen
Kelly A. Powers
Miles & Stockbridge P.C.
1201 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004
(202) 465-8374
(410) 773-9100 (e-fax)
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

*Attorneys for Petitioner,*
*Pierre Romel Howard*

19